Hillsborough,
No. 5384.

RICHARD W. LEONARD *v.* ROBERT PHILBRICK & *a.*

Argued June 11. 1965.
Decided June 15, 1965.

*Leonard & Leonard (Mr. Richard Leonard* orally), for the plaintiff, pro se.

*Nighswander, Lord, Bownes & Martin* and *Joseph P. Whelton* (*Mr. Hugh H. Bownes* and *Mr. Whelton* orally), for the defendants Philbrick and Bownes.

PER CURIAM. The death of the State Senator from District 13 set in motion the machinery for a special election. Part Second, Article 34 of the Constitution in pertinent part reads as follows: "All vacancies in the senate arising by death . . . shall be filled by a new election by the people of the district upon the requisition of the governor, as soon as may be after such vacancies shall happen."

At caucuses held in preparation for this special election twenty-three delegates were elected to attend the Senate District Convention twelve of which the plaintiff alleged were pledged to vote for him at the Convention. RSA 56:79, 80. One of the delegates favorable to the plaintiff at the Convention was challenged from the floor because of a disputed ballot and the Chairman of the Convention sent the matter to the credentials committee, a majority of which reported the delegate was duly elected and properly certified. RSA 56:79. It was moved that the report of the credentials committee be overruled by the Convention. The Chairman ruled that the delegate in question could not vote on the motion. This ruling was challenged and the vote on the Chairman's ruling and on the overruling of the credentials committee report was an

eleven-to-eleven vote. A vote to accept the credentials committee report also resulted in a tie vote.

Thereafter the Chairman of the Convention ruled that the delegate in question would have one-half vote and "the runnerup to the challenged delegate" would also have one-half vote. The plaintiff and one Thomas Claveau were respectively nominated for candidates. Subsequent and repeated ballots from 7:00 P. M. on June 2, 1965 to 4:00 A. M. June 3 resulted in tie votes for the nominees. The petition states: "It was then voted by the convention that they report to the State Democratic Committee that the convention was hopelessly deadlocked and that a candidate would have to be selected by the said State Committee." RSA 56:81 reads as follows: "CONVENTION FINAL JUDGE. Every convention shall be the final judge of the election and qualification of its own members, and the roll herein provided for may be amended by the convention to conform to its decisions of contested elections of its members."

The plaintiff contends that twelve of the delegates on the list certified by the Secretary of State were pledged to him, and that the action of the Chairman in ruling he was entitled to only eleven and one-half votes was not confirmed by the Convention and therefore was illegal. RSA 56:79. *O'Brien* v. *Fuller,* 93 N. H. 221, 228. The defendants deny that the votes of the Convention and the ruling of the Chairman were illegal (RSA 56:86) and contend that a court of equity has no jurisdiction to interfere in any event. *Attorney-General* v. *Barry,* 74 N. H. 353; *Stickney* v. *Salem,* 96 N. H. 500; *Maclay* v. *Fuller,* 96 N. H. 326. One answer to the defendants' contention would be that equity is not moribund and can adapt itself to change and the circumstances of any particular case. *Exeter Realty Co.* v. *Buck,* 104 N. H. 199, 200. See Note, Developments in the Law — Injunctions, 78 Harv. L. Rev. 994, 997-1024 (1965). However, we find it unnecessary to pass on the merits of either contention of the parties since the case is controlled by another consideration.

Under the provisions of RSA 56:81 the Convention is the final judge of the election and qualification of its members. This power is similar to that granted to the Senate itself by Part II, Article 35 of our Constitution. *Brown* v. *Lamprey,* 106 N. H. 121. The Convention, however, never determined the status of the questioned delegate. Irrespective of any irregularities in the votes and proceedings of the Convention, the vote of the Convention, after they were hopelessly deadlocked, to refer the selection of the candi-

314

date to the State Democratic Committee superseded the other proceedings of the Convention and constituted the final judgment of the Convention. Under these circumstances there is no occasion for judicial intervention. *Brown* v, *Lamprey, supra;* Annot. 169 A.L.R. 1281; *Petition of Dondero,* 94 N. H. 236. Consequently it follows that the action of the Trial Court in denying injunctive relief was proper and that it has no authority in the circumstances of this case to postpone the special election or the printing of ballots therefor.

*Petition dismissed.*