Curtis Mfg. v. Plasti-Clip          CV-89-430-SD  04/20/95 P.

UNITED STATES DISTRICT COURT FOR THE

                        DISTRICT OF NEW HAMPSHIRE


Curtis Manufacturing Company, Inc.


              v.                            Civil No. 89-430-SD


Plasti-Clip Corporation, et al



                            O R D E R


1.  Plasti-Clip's and Faneuf's Motion in Limine to Exclude Any

Reference to November 29, 1993, Rulings of Administrative Patent

Judge on Preliminary Motions in Interference Proceeding (document

84)

     Plaintiffs[1] filed a patent application intentionally seeking

an interference with the '078 patent in the Patent & Trademark

Office (PTO) on February 20, 1991.  Said interference was

declared on February 22, 1992, and assigned Interference Number

102,911.  After the filing of preliminary statements, plaintiffs

---

     [1]At the April 12, 1995, motions hearing, the court, upon
inquiry from counsel regarding the order of trial presentation,
denominated the parties in this matter as follows: Plasti-Clip
Corporation and Daniel Faneuf, plaintiffs; Curtis Manufacturing
Company, first defendant; Thomas Judd, second defendant.

submitted a 37 C.F.R. § 1.633(a) preliminary motion[2] which

alleged unpatentability of the '078 patent by reason of Judd's

failure to disclose material information to the PTO.[3]

The Administrative Patent Judge (APJ) evaluated plaintiffs'

claim under the "failure to disclose" standard set forth in FMC

Corp. v. Manitowoc Co., 835 F.2d 1411, 1415 (Fed. Cir. 1987).

Under said standard,

> one who alleges a "failure to disclose" form
> of inequitable conduct must offer clear and
> convincing proof of: (1) prior art or
> information that is material; (2) knowledge
> chargeable to applicant of that prior art or
> information and of its materiality; and (3)
> failure of the applicant to disclose the art
> or information resulting from an intent to
> mislead the PTO.

Id. (footnote omitted). Finding that plaintiffs did not sustain

---

[2]Subsection 1.633(a) provides, in pertinent part, as
follows:

> A party may file the following preliminary
> motions:
>     (a) A motion for judgment on the ground
> that an opponent's claim corresponding to
> a count is not patentable to the
> opponent.  In determining a motion filed
> under this paragraph, a claim may be
> construed by reference to the prior art
> of record.

37 C.F.R. § 1.633(a) (1994).

[3]Such "material information" consisted of certain product
literature and samples of Faneuf's Uni-Clip illustrating said
product's functionality for attachment to tubular hangers.

2

their burden with respect to both materiality and intent, the APJ denied their motion.

A section 1.633(a) motion was likewise filed by Judd, which alleged that certain claims embodied in the patent application Faneuf filed to provoke the interference were unpatentable by reason of the on sale or public use activities by Faneuf and/or Judd more than one year prior to Faneuf's February 20, 1991, filing date. The APJ held that the evidence then before him sufficiently made out a prima facie case for obviousness and thus accordingly granted Judd's motion.

Pursuant to the PTO's procedural rules, plaintiffs were thereafter ordered to show cause, within twenty (20) days from the date of the rulings, why judgment should not be entered in Judd's favor on the obviousness issue. Faneuf responded to the order and sought a final hearing for review of all the APJ's rulings on the preliminary motions. Faneuf subsequently filed a motion to suspend the interference proceedings pending resolution of the matters sub judice, which have been proceeding in this court concurrently with the interference action before the PTO.[4]

---

[4]Although granted by the APJ, said motion was subsequently overturned by a panel decision on reconsideration due to the uncertain posture of the trial in this court. Faneuf filed a Renewed Motion to Suspend Interference Proceedings on January 18, 1995, which had not been acted upon as of April 4, 1995. The APJ has, however, suspended the show cause filing dates.

3

"At an appropriate stage of the interference, the parties will be given an opportunity to appear before the Board [of Patent Appeals and Interferences] to present oral argument at a final hearing." 37 C.F.R. § 1.654(a). It is only after such "final hearing" that "the Board shall enter a decision resolving the issues raised . . . ." 37 C.F.R. § 1.658(a). "When the Board enters a decision awarding judgment as to all counts, the decision shall be regarded as a final decision." Id.

Notwithstanding any "final decision" rendered by the Board pursuant to 37 C.F.R. § 1.658(a), "[a]ny party to an interference dissatisfied with the decision of the Board . . . on the interference, may have remedy by civil action," 35 U.S.C. § 146 (Supp. 1995) to any United States District Court with appropriate personal jurisdiction over the parties or by appeal to the United States Court of Appeals for the Federal Circuit, 35 U.S.C. § 141.

"A proceeding under § 146 is not a chance for a party to reconstruct its case, based on a new litigation strategy, leapfrogging the administrative process in the PTO . . . . Rather, an action under § 146 is essentially a proceeding to review the action of the Board." Conservolite, Inc. v. Widmayer, 21 F.3d 1098, 1102 (Fed. Cir.), cert. denied, ___ U.S. ___, 115 S. Ct. 576 (1994). "Section 146 authorizes the district court on review to accept new testimony, but normally only as to issues

4

raised by the parties during the proceedings below or by the Board's decision."  Id. (citation omitted).  Accord Andrew Corp. v. Gabriel Elecs., Inc., 782 F. Supp. 149, 150-51 (D. Me. 1992) ("In a civil action to overturn a decision of the Board . . . the party seeking relief 'does not start over to prosecute his application before the district court unfettered by what happened in the PTO . . . .  [It] has the laboring oar to establish error by the board.'"  (quoting Fregeau v. Mossinghoff, 776 F.2d 1034, 1038 (Fed. Cir. 1985) (footnote omitted) (alteration in Andrew Corp.)).

In the view of the court, whatever rulings were made by the APJ on the preliminary motions of the parties in the interference proceedings were precisely that--preliminary.  As such, the standards guiding this court's 35 U.S.C. § 146 review of an interference proceeding are inapplicable as premature.[5]  See Sanford v. Kepner, 344 U.S. 13, 15 (1952) (civil action remedy

---

[5]That is, district court review under section 146 does not come into play until the Board issues a final decision pursuant to 37 C.F.R. § 1.658(a).  Despite the Federal Circuit's apparent section 146 standard of review clarification, see Conservolite, supra, 21 F.3d at 1101-02, plaintiffs would still be entitled to contest the Board's conclusions.  E.g., Conservolite, supra, 21 F.3d at 1102 ("In order for an issue to have been raised adequately so that it qualifies for consideration in a § 146 proceeding, the issue should have been raised as specified in the PTO's interference rules, for example, through preliminary motions . . . .").

available only to an applicant "who has been finally denied a patent because of a Patent Office decision against him and in favor of his adversary on the question of priority") (construing former section 63, predecessor of 35 U.S.C. § 146). In consequence thereof, the court finds that the rulings on the preliminary motions, being neither rulings on the merits nor final judgments, inhere qualities whose probative value is clearly outweighed by the danger of unfair prejudice. See Rule 403, Fed. R. Evid. Accordingly, the court further finds and rules that any reference to the APJ's rulings on the preliminary motions filed in Interference Proceeding No. 102,911 is inadmissible.

2. Plasti-Clip's and Faneuf's Motion in Limine to Exclude Evidence of Contract Damages (document 85)

Plasti-Clip and Faneuf move to exclude any evidence as to how much Plasti-Clip might have earned if Curtis had purchased clips from Plasti-Clip pursuant to the contracts that were at one time contemplated in negotiations between the parties. Plasti-Clip and Faneuf contend that such evidence is irrelevant because they have withdrawn their breach of contract claim.

Defendant Curtis contends that evidence of the prices at which Plasti-Clip sells its products, including the prices at

which it proposed to sell products to Curtis, and the profits of Plasti-Clip thereon, are relevant to Plasti-Clip's claims for lost profits and a reasonable royalty for patent infringement. Curtis further contends that such evidence is relevant to Plasti-Clip's tort claims and to the course of dealings between the parties.

"The goal of damages in actions for breach of contract is to put 'the nonbreaching party in the same position it would have been in' if the contract had been fully performed." Lahey v. Shaw, 123 N.H. 648, 651, 466 A.2d 911, 914 (1983) (citing Martin v. Phillips 122 N.H. 34, 37, 440 A.2d 1124, 1125 (1982)). Because Plasti-Clip and Faneuf have withdrawn their breach of contract claim, this measure of damages is no longer available.

The measures of damages available to plaintiffs under their patent infringement and tort claims differ from breach of contract damages. Damages awarded in a patent infringement action must be "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284 (1984). In this action, plaintiffs are seeking lost profits or, in the alternative, a reasonable royalty as their measure of damages for the alleged infringement of the '863 patent by defendants.

7

With respect to plaintiffs' claim for lost profits, the court has ruled herein, see infra at pp. 20-23, that Curtis is entitled to argue and offer evidence showing plaintiffs are only entitled to a portion of defendants' profits from their sales of the document holder in question. The court finds that evidence of Plasti-Clip's prices for its products, including the prices at which it proposed to sell its products to Curtis, is relevant to the issue of apportionment of lost profits, and is therefore admissible.

Plaintiffs alternatively assert that they are entitled to reasonable royalties as compensation for Curtis's infringement of the '863 patent. In evaluating what constitutes a "reasonable royalty", most courts look to the list of factors relevant to that determination set forth in Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), modified and aff'd, 446 F.2d 295 (2d Cir.), cert. denied, 404 U.S. 870 (1971). One such factor is the prior or existing royalties received by the patentee for the licensing of the patent in question. Related to this factor is evidence of prior offers to license by the patentee. See 5 DONALD S. CHISUM, PATENTS § 20.03[3], at 20-172 n.15 (1994) (listing cases in which court considered the royalty rate offered by the patentee as one factor in setting a reasonable royalty rate).

The court finds and rules that the prices at which Plasti-Clip sells its products is one of the many factors the court may consider in determining what a reasonable royalty rate is in this case.  Evidence of such prices is therefore relevant and admissible.

Plaintiffs' motion to exclude evidence related to how much it would have earned if they had sold their products to Curtis under contract is denied insofar as such evidence is relevant to the other measures of damages at issue in this action.


3.  Thomas W. Judd's Motion in Limine (document 88)

Defendant Judd moves to exclude (1) evidence of his indemnification agreement with Curtis and (2) evidence of his financial condition.

a.  Indemnification Agreement

Defendant Judd represents that he has an indemnification agreement with Curtis whereby Curtis will indemnify him for any judgment rendered against him in this action.  Judd asserts that any evidence of or reference to this agreement is inadmissible under Rule 411, Fed. R. Evid.

Rule 411, entitled "Liability Insurance," provides,

> Evidence that a person was or was not
> insured against liability is not admissible
> upon the issue whether the person acted
> negligently or otherwise wrongfully.  This

rule does not require the exclusion of evidence against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

Plaintiffs contend that any indemnity agreement Judd has with Curtis is relevant to the determination of whether his acts of infringement and misappropriation were willful and deliberate. In support thereof, plaintiffs cite Baltz v. Walgreen Co., 198 F. Supp. 22 (W.D. Tenn. 1961), and Rayonier, Inc. v. Georgia-Pacific Corp., 281 F. Supp. 687 (W.D. Wash. 1967). The court, having reviewed both cases, finds that the cases (1) pre-date the 1987 amendment which added Rule 411 to the Federal Rules of Evidence and (2) are, in any event, inapposite to the present case.

To the extent that Judd's indemnification agreement with Curtis operates to insure him against loss in the event he is found liable in the action, the court finds that said agreement is subject to Rule 411. Any evidence of or reference to said agreement is accordingly inadmissible to prove that Judd acted negligently or otherwise wrongfully.

At this pretrial stage, none of the exceptions set forth in sentence two of Rule 411 appear to apply. If at trial plaintiffs seek to admit evidence of Judd's indemnity agreement with Curtis for a purpose other than to prove Judd acted negligently or otherwise wrongfully, the court will "apply the principles of

10

Fed. R. Evid. 403 to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." Pinkham v. Burgess, 933 F.2d 1066, 1072 (1st Cir. 1991).

### b.   Judd's Financial Condition

Defendant Judd seeks to exclude evidence of his financial condition and evidence of the compensation he received from Curtis on the grounds that such evidence is both irrelevant and prejudicial.

Plaintiffs assert that evidence of the compensation and benefits Judd received from Curtis is relevant to their claim for damages in the form of profits wrongfully realized by Judd because of his alleged misappropriation and infringement.  In support thereof, plaintiffs state that the allegedly stolen document holder was quite profitable for Curtis and point to evidence showing that a portion of Judd's compensation was performance based.

The court finds that evidence of Judd's current financial condition or wealth is irrelevant to the patent infringement, misappropriation, and unfair competition and trade practices claims asserted against him by plaintiffs. See Rule 401, Fed. R. Evid.  The court further finds that any probative value of such

11

evidence is clearly outweighed by the danger of unfair prejudice that would be created by presenting such evidence to a jury. See Rule 403, Fed. R. Evid. The court therefore rules that evidence of Judd's current financial condition or wealth is inadmissible.

However, the court further finds that a blanket exclusion of all evidence regarding Judd's compensation from Curtis is unwarranted and inappropriate at this time. Evidence showing that Judd's compensation was tied to profits wrongfully realized by Curtis from alleged misappropriation and infringement is relevant to plaintiffs' claims and is therefore admissible. Judd's motion in limine is accordingly granted in part and denied in part.

4. Curtis's Motion in Limine to Exclude Evidence of Damages for Alleged Infringement of the '078 Patent (document 91)

Curtis moves to preclude any evidence of or reference to damages for infringement of the '078 patent on the ground that Plasti-Clip's and Faneuf's claim for such damages is barred for the time period during which Curtis has held legal title to the patent.

"A patent is a creature of statute, as is the right of a patentee to have a remedy for infringement of his patent." Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574, 1578 (Fed.

12

Cir. 1991) (footnotes omitted). The general rule as to who can bring a civil action for patent infringement is that "one seeking to recover money damages for infringement of a United States patent (an action 'at law') must have held the *legal title* to the patent *during the time of the infringement*." Id. at 1579 (emphasis in original). See also 6 CHISUM, supra, § 21.03[2][g].

The parties do not dispute that Curtis currently has legal title to the '078 patent. However, as explained in this court's order of November 21, 1994, at p. 32, Plasti-Clip and Faneuf "argue that equitable title to the '078 patent, acquired through the appropriation of design modifications to the '863 patent, is held by Faneuf. As a combined consequence of the equitable title and the malappropriation, defendants seek an assignment of legal title to the '078 patent to Faneuf as the rightful patentee." (Footnotes omitted.)

Plasti-Clip and Faneuf also indicate in their final pretrial statement that if the '078 patent is assigned retroactively to Faneuf, then they seek damages for infringement of the '078 patent for the time period following the effective date of the retroactive assignment. The problem presented here is that plaintiffs, as the purported equitable title holders of the '078 patent, seek damages for infringement of the patent by Curtis during a time period when Curtis held legal title to the

13

'078 patent.

This court has already determined that an assignment of the allegedly malappropriated patent is among the equitable remedies available to plaintiff under the circumstances of this case. See Order of Nov. 21, 1994. However, plaintiffs have not provided, nor has this court uncovered, any authority to support plaintiffs' position that such an assignment can be retroactive, thereby giving plaintiffs the right to then seek damages for past infringement of the patent, which is a remedy at law.

This does not mean plaintiffs are without a remedy for the time period during which they contend Curtis wrongfully held legal title to the '078 patent. The full range of equitable remedies remain available to allow plaintiffs to obtain redress for Curtis's allegedly wrongful conduct. E.g., Hoeltke v. C.M. Kemp Mfg. Co., 80 F.2d 912, 923 (4th Cir. 1935) (equitable remedies available against one who misappropriates ideas of another and profits thereby), cert. denied, 298 U.S. 673 (1936).

The court finds and rules that if plaintiffs receive an equitable assignment of the '078 patent, they are not then entitled to seek a remedy at law for infringement of the patent by Curtis for the time period prior to the date of the assignment. Plaintiffs are, however, entitled to seek full redress against Curtis in the form of equitable relief for that

14

time period.

In so ruling, the court notes that the evidence plaintiffs will require to prove they are entitled to equitable relief is the same type of evidence plaintiffs would need to support a claim for damages in an action at law for patent infringement. Thus, although the court, for the reasons stated hereinabove, "grants" Curtis's motion to preclude evidence of damages for infringement of the '078 patent, the granting of said motion shall not be construed to exclude evidence relevant to plaintiffs' claim for equitable relief.

5. Curtis's Motion in Limine Regarding Alleged Inequitable Conduct in Obtaining U.S. Patent No. 4,902,078 (document 92)

Curtis seeks to "preclude any evidence at trial regarding any claim that U.S. Patent No. 4,902,078 (''078 patent') is invalid due to the purported failure of Curtis to cite certain alleged prior art . . . [s]ince such evidence is barred by claim and issue preclusion." Curtis's Memorandum in Support of Motion in Limine Regarding Alleged Inequitable Conduct at 1 [hereinafter Inequitable Conduct Memorandum]. The alleged preclusive event is the APJ's rulings on the parties' preliminary motions in the

15

interference proceeding.[6]

"There is no doubt that in proper circumstances decisions of the Board of Patent Interferences may be given collateral estoppel effect. However, the doctrine of collateral estoppel bars relitigation only of issues actually determined in prior litigation." Gould v. Mossinghoff, 711 F.2d 396, 398 (D.C. Cir. 1983), aff'd in part and vacated in part on other grounds sum nom., Gould v. Quigg, 822 F.2d 1074 (Fed. Cir. 1987) (footnote and citation omitted) (emphasis added). "Considerations relevant to a determination of [administrative action] finality include whether the agency action is definitive [and] whether the action has direct or immediate legal force or practical effect on the complaining party . . . ." Eastman Kodak Co. v. Mossinghoff, 704 F.2d 1319, 1322 (4th Cir. 1983) (citation omitted).

Contrary to Curtis's contention that "[t]he decision in the Interference has claim and issue preclusion effect here," Inequitable Conduct Memorandum at 4, the PTO's own rules indicate that a decision is not "final" "until the Board enters a decision awarding judgment as to all counts . . . ." 37 C.F.R. § 1.658(a). Moreover, the instant facts do not portray the "proper circumstances," Gould, supra, which would otherwise raise the bar

---

[6]For a discussion of the preliminary motions and the APJ's rulings thereon, see supra pp. 1-3.

16

of either issue or claim preclusion. To wit, the agency action at issue is the APJ's rulings on the preliminary motions and as such are not considered "definitive" agency action. See Phillips Petroleum Co. v. Brenner, 383 F.2d 514, 517 (D.C. Cir. 1967), cert. denied, 389 U.S. 1042 (1968) ("The only final order in an interference proceeding is a determination of priority.") Further, said rulings lack "direct or immediate legal force or practical effect" due to the pendency of further proceedings before the Interference Board.[7]

Accordingly, the court finds and rules that the decision reached by the APJ on the parties' preliminary motions in the interference proceeding is not a "final judgment" as that term is construed for res judicata or collateral estoppel purposes. In consequence thereof, Curtis's motion in limine seeking to preclude the introduction of evidence regarding any alleged inequitable conduct on the part of Judd, or Curtis as Judd's assignee, in the prosecution of the '078 patent is herewith denied.

---

[7]The court notes that such "further proceedings" are different in kind from an appeal of the Board's final decision as provided by 35 U.S.C. §§ 141 and 146, and as such the well-settled rule that the pendency of an appeal does not affect the finality of a decision for res judicata or collateral estoppel purposes is inapplicable.

<u>6. Curtis's Motion in Limine to Exclude Evidence of Lost Profits</u>

<u>(document 93)</u>

Curtis moves to preclude any evidence of or reference to profits allegedly lost by Plasti-Clip "unless and until Plasti-Clip presents evidence sufficient to permit a jury to find the facts that are prerequisite to such a claim." Curtis's Motion at 1.

To obtain a lost profits award as a measure of damages in a patent infringement action, the patent owner must prove "there was a reasonable probability that 'but for' the infringement, it would have made the infringer's sales." <u>Kearns v. Chrysler Corp.</u>, 32 F.3d 1541, 1551 (Fed. Cir. 1994) (citing <u>Water Techs. Corp. v. Calco, Ltd.</u>, 850 F.2d 660, 671 (Fed. Cir.), <u>cert. denied</u>, 488 U.S. 968 (1988)), <u>cert. denied</u>, 63 U.S.L.W. 3691 (U.S. 1995). <u>See also</u> 5 Chisum, <u>supra</u>, § 20.03[1].

> One way to establish "but for" causation is to meet the four-part test pronounced in <u>Panduit Corp. v. Stahlin Bros. Fiber Works</u>, 575 F.2d 1152, 1156 (6th Cir. 1978). To recover under that test, the patent owner must prove (1) a demand for the patented product, (2) an absence of acceptable noninfringing substitutes, (3) *manufacturing and marketing capability to exploit the demand*, and (4) the amount of profit the patent owner would have made.

<u>Kearns</u>, <u>supra</u>, 32 F.3d at 1551 (internal citation omitted) (emphasis in original).

Further, compensatory damages, including lost profits, are

18

available under state law to one who has been tortiously harmed by another "'if, but only if, [the injured party] establishes by proof the extent of the harm and the amount of money representing adequate compensation *with as much certainty as the nature of the tort and the circumstances permit*.'"  Clipper Affiliates v. Checovich, 138 N.H. 271, 274, 638 A.2d 791, 794 (1994) (quoting RESTATEMENT (SECOND) OF TORTS § 912 (1982)) (emphasis in Clipper). An award of lost profits cannot be "speculative."  See, e.g., Eastern Mountain Platform Tennis, Inc. v. Sherwin-Williams Co., 40 F.3d 492, 502-03 (1st Cir. 1994) (applying New Hampshire law) (award of past lost profits in unfair trade practices action upheld because award was supported by evidence and therefore not speculative).  Instead, the evidence of lost profits must "provide[] enough information under the circumstances to permit the fact finder to reach a reasonably certain determination of the amount of gains prevented."  Independent Mechanical Contractors, Inc. v. Gordon T. Burke & Sons, Inc., 138 N.H. 110, 118, 635 A.2d 487, 491 (1993).

Curtis contends that Plasti-Clip's evidence is insufficient to prove that it is entitled to lost profits.  Therefore, Curtis argues, all evidence of lost profits should be excluded. Plaintiffs maintain that their evidence is sufficient to support

19

a claim for lost profits.

The court will not attempt to determine whether Plasti-Clip can meet its burden of proof on its claim for lost profits by way of a motion in limine filed ten days before trial. The court rules that Plasti-Clip may introduce evidence in support of its claim for lost profits at trial. If, at the close of Plasti-Clip's evidence, Curtis believes Plasti-Clip has failed to meet its burden of proof as to said claim, Curtis may move for judgment as a matter of law pursuant to Rule 50(a), Fed. R. Civ. P.

7. Curtis's Motion in Limine Regarding Claims by Plasti-Clip and Faneuf for Disgorgement of Profits (document 94)

Plasti-Clip and Faneuf assert that Curtis has profited at their expense by misappropriating Faneuf's design modifications to the '863 patent. As an equitable remedy for Curtis's unfair trade practices, plaintiffs seek disgorgement of the profits realized by Curtis from its sales of products incorporating the misappropriated design.

Curtis moves to preclude evidence of or reference to damages based upon a disgorgement of Curtis's profits "unless and until Plasti-Clip presents evidence sufficient to establish a foundation of the amount of profits, if any, allocable to the

alleged inventions of Plasti-Clip."  Curtis's Motion at 1.

Under New Hampshire's Consumer Protection Act, RSA 358-A, a person injured by another's unfair competition or unfair trade practices "may bring an action for damages and for such equitable relief, including an injunction, as the court deems necessary and proper."  RSA 358-A:10, I (Supp. 1994).

Under the equitable doctrine of unjust enrichment, "one shall not be allowed to profit or enrich himself at the expense of another contrary to equity."  Pella Windows & Doors, Inc. v. Faraci, 133 N.H. 585, 586, 580 A.2d 732, 732 (1990) (citations omitted).  "A plaintiff is entitled to restitution if he shows that there was unjust enrichment either through wrongful acts or passive acceptance of a benefit that would be unconscionable to permit the defendant to retain."  Cheshire Medical Ctr. v. W.R. Grace & Co., 764 F. Supp. 213, 218 (D.N.H. 1991), vacated in part, on other grounds, 767 F. Supp. 396 (D.N.H. 1991); see also Petrie-Clemons v. Butterfield, 122 N.H. 120, 127, 441 A.2d 1167, 1172 (1982) ("The correct measure of restitution for unjust enrichment is the value of the benefit received by the unjustly enriched party.") (citing Martin v. Phillips, 122 N.H. 34, 38, 440 A.2d 1124, 1126 (1982)).

Curtis argues that plaintiffs are not entitled to a disgorgement of profits unless and until they prove what portion

21

of Curtis's profits were attributable to their contributions. In support thereof, Curtis cites an 1884 patent law case, Garretson v. Clark, 111 U.S. 120 (1884), which the court finds to be inapplicable to plaintiffs' claim for disgorgement of profits under New Hampshire law.

Where, as here, the plaintiffs seek disgorgement of profits as an equitable remedy for the defendants' unfair trade practices, the court finds that the following general principle applies: "Once the plaintiffs demonstrate that the defendants have made profits from sales of products incorporating the misappropriated trade secrets, the burden shifts to the defendants to demonstrate the portion of their profits which is not attributable to the trade secrets." Jet Spray Cooler, Inc. v. Crampton, 385 N.E.2d 1349, 1358 n.14 (Mass. 1979) (citing cf. Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co., 225 U.S. 604, 620 (1912)). The court finds this allocation of burdens to be consistent with the equitable principles which govern the disgorgement of profits from one who has enriched himself at another's expense.

Applying these principles, the court finds and rules that Plasti-Clip and Faneuf are entitled to argue and offer evidence to show that they are entitled to disgorgement of the full amount

22

of profits realized by Curtis from its sale of the document holder in question. In response, Curtis is entitled to offer evidence showing that only a portion of the profits it realized were attributable to plaintiffs' contributions.

Accordingly, Curtis's motion in limine regarding plaintiffs' claim for disgorgement of profits is denied.


## 8. Curtis's Motion in Limine Regarding Ownership of the '078 Patent (document 95)

Although more properly characterized as a motion for reconsideration of the court's November 21, 1994, order denying Curtis's "absolution via bankruptcy" claim, in which case the instant motion would be denied as untimely, Curtis now seeks to reargue, by medium of motion in limine, the effect of Curtis's bankruptcy reorganization as it relates to the ownership of the '078 patent. For the reasons that follow, said motion is herewith denied.

In summary, Curtis asserts that due to confirmation of the Curtis bankruptcy reorganization plan, in which plaintiffs did not participate, ownership of the '078 patent vested in Curtis free of all claims to the contrary. As a result, any evidence relating to plaintiffs' claims of ownership, equitable or

23

otherwise, is barred by operation of 11 U.S.C. § 1141(d) and enjoined by 11 U.S.C. § 524(a)(2).[8] Alternatively, Curtis contends, citing Sixth Circuit caselaw, that plaintiffs' claim of constructive trust[9] is likewise defeated by the bankruptcy reorganiza-tion.

The court begins by noting that <u>X/L Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)</u>, 16 F.3d 1443 (6th Cir. 1994), cited

---

[8]As noted above, the court has previously addressed this argument and has indicated that "the 'new opportunity' afforded by a bankruptcy proceeding cannot and does not absolve a debtor of liability incurred due to post-confirmation activities. Likewise, nowhere in the Bankruptcy Act can there by found a literal prohibition regarding the use of pre-confirmation facts to support a cause of action based on post-confirmation acts." Order of Nov. 21, 1994, at pp. 11-12. Accordingly, the court herewith dismisses Curtis's statutory bar/injunction argument and directs its attention to the constructive trust issue.

[9]The elements of the constructive trust argument were summarized by the court in its November 21, 1994, order as follows:

> With regard to the '078 patent, [plaintiffs] do not contest the fact that Curtis, as Judd's assignee, presently holds legal title. Rather, [plaintiffs] argue that equitable title to the '078 patent, acquired through the appropriation of design modifications to the '863 patent, is held by Faneuf. As a combined consequence of the equitable title and the malappropriation, [plaintiffs] seek an assignment of legal title to the '078 patent to Faneuf as the rightful patentee.

Order of Nov. 21, 1994, at pp. 31-32 (footnotes omitted).

24

in Curtis's motion in limine, is inapposite under the facts of the case at bar. Omegas Group involved a creditor who was allegedly defrauded of certain funds as part of a business transaction by a debtor who took the funds knowing full well that a petition for bankruptcy protection was imminent. Omegas Group, supra, 16 F.3d at 1445-47. The creditor's constructive trust argument, accepted by the bankruptcy court and affirmed by the district court, was ultimately reversed by the circuit panel, which limned,

> Unless a court has already impressed a constructive trust upon certain assets or a legislature has created a specific statutory right to have particular kinds of funds held as if in trust, the claimant cannot properly represent to the bankruptcy court that he was, at the time of the commencement of the case, a beneficiary of a constructive trust held by the debtor.

Id. at 1449. After conducting further research into the law of constructive trusts and their application under New Hampshire precedent, this court finds that it cannot adopt the conclusions of the Omegas Group panel.

Despite Curtis's position that "Plasti-Clip's failure to participate in the Curtis reorganization and the subsequent discharge to Curtis . . . vested the property of the estate in Curtis [and] bars all claims by Plasti-Clip for ownership of the

25

'078 Patent," Motion in Limine Regarding Ownership of '078 Patent at 10, "[t]he Bankruptcy Code cannot be construed to effectively divest someone of property which is rightfully theirs. By operation of [11 U.S.C. §] 541, a debtor can only bring into the estate that property which he holds both the legal and equitable title," Butts v. Butts (In re Butts), 46 B.R. 292, 297 (Bankr. D.N.D. 1985).

"Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'" Begier v. IRS, 496 U.S. 53, 59 (1990); see also 11 U.S.C. § 541(d); Bigelow v. Brown (In re Brown), 168 B.R. 331, 335 (Bankr. N.D. Ill. 1994) ("In general, property that a debtor holds as a trustee does not become property of the bankruptcy estate."); Central Trust Co. v. Shepard (In re Shepard), 29 B.R. 928, 932 (Bankr. M.D. Fla. 1983) ("[W]here a debtor holds only bare legal title to property without any equitable interest, bare legal title is all that becomes property of the estate.").

When property is acquired by the debtor through fraud or misrepresentation, said "property becomes estate property because the debtor holds legal title, but . . . all the estate has is legal title, if the traceable property would be subject to a

26

constructive trust under non-bankruptcy law."  1 ROBERT E. GINSBERG

& ROBERT D. MARTIN, BANKRUPTCY: TEXT, STATUTES, RULES § 5.02[j], at 5-34

(1992).  Pursuant to New Hampshire law,

> A constructive trust will be imposed whenever
> necessary to satisfy the demand of justice
> since a constructive trust is merely "the
> formula through which the conscience of
> equity finds expression."  Beatty v.
> Guggenheim Exploration Co., 225 N.Y. 380,
> 386, 122 N.E. 378, 380 (1919).  The specific
> instances in which equity impresses a
> constructive trust are numberless, as
> numberless as the modes by which property may
> be obtained through bad faith and
> unconscientious acts.  Cf. Leonard v.
> Philbrick, 106 N.H. 311, 313, 210 A.2d 819,
> 820 (1965). . . .  Among the numerous bases
> for a constructive trust is the existence of
> "circumstances which render it
> unconscientious for the holder . . . to
> retain and enjoy the beneficial interest.
> . . ."  4 J. POMEROY, EQUITY JURISPRUDENCE § 1053
> (5th ed. 1941); Patey v. Peaslee, 101 N.H.
> 26, 29, 131 A.2d 433, 436 (1957).

Milne v. Burlington Homes, Inc., 117 N.H. 813, 816, 379 A.2d 198,

199-200 (1977).  "It is probably correct to say that the present

state of the law in New Hampshire is that a constructive trust

will be imposed in any situation where unjust enrichment is

found, regardless of whether there is a confidential relationship

between the parties."  7 CHARLES A. DEGRANDPRE, NEW HAMPSHIRE PRACTICE:

WILLS, TRUSTS AND GIFTS § 663, at 271 (1986).

Assuming, without deciding, that imposition of a

constructive trust is appropriate, what remains for resolution, therefore, is the point in time when said constructive trust springs into operation. Curtis, quoting language from Omegas Group, supra, contends that "a constructive trust . . . does not exist until a plaintiff obtains a judicial decision finding him to be entitled to a judgment 'impressing' defendant's property or assets with a constructive trust." Omegas Group, supra, 16 F.3d at 1451. However, the weight of authority indicates that "[a] constructive trust arises at the time of the occurrence of the events giving rise to the duty to reconvey the property." In re Shepard, supra, 29 B.R. at 932; accord City Nat'l Bank v. General Coffee Corp. (In re General Coffee Corp.), 828 F.2d 699, 702 (11th Cir. 1987) ("constructive trust arises when the facts giving rise to the fraud occur"), cert. denied, 485 U.S. 1007 (1988); Capitol Investors Co. v. Executors of Morrison's Estate, 800 F.2d 424, 427 n.5 (4th Cir. 1986) (same); United States v. Fontana, 528 F. Supp. 137, 146 (S.D.N.Y. 1981) (same, applying New York law).

Indeed,

> It has been suggested that the constructive
> trust does not arise until the defrauded
> person brings a suit in equity and the court
> decrees specific restitution. The notion
> seems to be that a constructive trust is
> created by the court and that it therefore
> does not arise until the court creates it by
> its decree. The notion is in part fostered
> by the terminology employed. It is sometimes
> said that when there are sufficient grounds

28

> for imposing a constructive trust, the court "constructs a trust." The expression is, of course, absurd. The word "constructive" is derived from the verb "construe," not from the verb "construct." . . . The court construes the circumstances in the sense that it explains or interprets them; it does not construct them. So in the case of a constructive trust, the court finds from the circumstances that some of the consequences which would follow from the creation of an express trust should also follow. . . . <u>It would seem that there is no foundation whatever for the notion that a constructive trust does not arise until it is decreed by a court. It arises when the duty to make restitution arises, not when that duty is subsequently enforced.</u>

5 Austin Wakeman Scott, The Law of Trusts § 462.4, at 3420-21 (1967) (emphasis added) (footnote omitted).

The court therefore finds and rules that the facts as alleged sufficiently portray an instance where the imposition of a constructive trust would be warranted and said trust would relate back to the time of filing the application which ultimately resulted in the '078 patent. Curtis, as the owner of a misappropriated patent, would have taken only its legal title to the patent through the bankruptcy proceedings, and thus plaintiffs' equitable interest was neither encumbered, diminished, nor discharged upon confirmation of the plan. Accordingly, Curtis's motion in limine seeking to exclude

29

evidence relating to ownership of the '078 patent must be and herewith is denied.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

April 20, 1995

cc:   William O. Hennessey, Esq.
      Jamie N. Hage, Esq.
      Jack R. Pirozzolo, Esq.
      Craig L. Staples, Esq.
      W. Wright Danenbarger, Esq.
      Robert E. McDaniel, Esq.