LYONS PARTNERSHIP, L.P., Plaintiff,

v.

Ted GIANNOULAS, et al., Defendants.

No. 4:97–CV–852–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

July 29, 1998.

*MEMORANDUM OPINION and ORDER*

MCBRYDE, District Judge.

Came on for consideration the motion of defendants, Ted Giannoulas ("Giannoulas") and TFC, Inc. ("TFC"), for summary judgment and the cross-motion of plaintiff, Lyons Partnership, L.P., for partial summary judgment. The court, having considered the motions, the responses, the replies, the record, the summary judgment evidence, and applicable authorities, finds that defendants' motion should be granted and that plaintiff's motion should be denied.

## I.

### *Plaintiff's Claims*

On October 8, 1997, plaintiff filed its original complaint in this action. Plaintiff alleges that it is the creator and owner of Barney, "a purple, highly stylized 'Tyrannosaurus Rex' type dinosaur character with a friendly mien, a swath of green down his chest and stomach, and green spots on his back," Plaintiff's Complaint at 2, ¶ 9, and that it owns a number of trademark and service mark registrations in and to the Barney character's name, likeness, logo, and color combinations and a number of copyrights for performances in which Barney has appeared. Plaintiff takes umbrage at an act performed by defendant Giannoulas appearing as The Famous Chicken (the "Chicken")[1] in which a Barney-type character appears. Plaintiff sues defendants for trademark infringement, false description, unfair competition, dilution of trademark, and for infringement of copyright. Plaintiff seeks an accounting and impoundment and destruction of the costumes used in the offending skits.

## II.

### *The Cross–Motions*

Plaintiff and defendants have each filed motions for summary judgment. Plaintiff's motion does not address the issue of damages. Neither motion complies with the requirements of Local Civil Rule 56.3 of the Local Rules of the United States District

Thomas S. Leatherbury, William D. Sims, Jr., Russell Lowell Reid, Jr., George Harvey Dunn, III, Vinson & Elkins, Dallas, TX, for Plaintiff.

James L. Truitt, Andrews & Kurth, Dallas, TX, Kenneth M. Fitzgerald, Lisa P. Gomez, William P. Cole, Latham & Watkins, San Diego, CA, for Defendants.

1. The Chicken is also known as the "San Diego Chicken" and "Famous San Diego Chicken."

Court for the Northern District of Texas. Nevertheless, the court is considering the motions.

## III.

### Undisputed Facts

The facts giving rise to plaintiff's complaint are essentially undisputed:

Plaintiff is a limited partnership and the successor-in-interest to DLM, Inc., a Texas corporation that, in 1988, released three videotapes featuring Barney, a purple and green dinosaur "brought to life" through the imagination of young children. Plaintiff is the creator and owner of Barney and related dinosaur characters. Plaintiff is engaged in the creation, production, and distribution of books, videotapes, television programs, and plush dolls featuring these characters. Barney is a positive, wholesome character who encourages children to use their imaginations and to solve problems. He is a wise, yet innocent, friend who provides a secure, friendly, loving feeling for preschool children and who consistently demonstrates the values of love, basic trust, and civility. Barney's primary target audience is preschool-aged children whose parents are the actual purchasers of Barney merchandise. Barney is widely known and enjoys tremendous success throughout the United States and elsewhere.

The Chicken made his debut in March 1974 when defendant Giannoulas wore a chicken costume to distribute Easter candy at the San Diego Zoo as part of a radio station promotion. Giannoulas then developed the concept of a sports mascot in a chicken costume and created his own original gestures, pantomimes, and comedy routines. By 1978, the Chicken had become a national celebrity. In 1979, Giannoulas formed defendant TFC through which he offers his services as the Chicken. The Chicken has performed around the world for more than 60 million people. He is currently booked on approximately 150 dates each year for professional sporting events, charities, trade shows, and parades. The Chicken is widely known as a comic performer. His antics frequently target umpires, referees, and unsuspecting athletes. The Chicken also parodies and satirizes prominent entertainment celebrities and fictional characters. The Chicken has performed comedy routines lampooning Howard Cosell, Gumby, the Energizer bunny, Vanilla Ice, Pete Rose, Michael Jackson, Elvis, and Inspector Clouseau. Slapstick comedy and physical pratfalls are recurring themes in the Chicken's routines. The Chicken's services are marketed to sports organizations and other parties that book appearances. The Chicken is not featured on a regular television program, nor does he engage in retail marketing or sales of merchandise through toy stores or other retail outlets.

Plaintiff owns a number of trademark and service mark registrations in and to the Barney character's name, likeness, logo, and color combination. Plaintiff also owns a number of copyright registrations relating to the Barney character.

In 1994, Giannoulas came up with the idea of using a purple dragon costume to conjure up the image of Barney for purposes of a comedy gag at professional sporting events. The costume has a rounded purple body with an oversized, rounded head, a swatch of contrasting color down the chest and stomach, a strip of white around the mouth resembling teeth, and a friendly, smiling demeanor. Giannoulas uses the skit only as part of performances at baseball, basketball, and hockey games, which are almost always at night. His performance at sporting events lasts for several hours and consists of approximately 100 sight gags per night. The skit in question is a two-minute slapstick routine in which the putative Barney dances, hops, skips, waves, hugs, blows kisses, and is flipped, slapped, stood upon, tackled, wrestled, and otherwise subjected to aggressive physical conduct by the Chicken. The skit begins with a rap-style piece of dance music played during an intermission. The Chicken takes the field with some disco steps. About 30 seconds into the dance, the putative Barney emerges onto the field from the opposite direction, prancing gingerly toward the Chicken as the real Barney would walk. The Chicken is so absorbed by his own disco dancing that he is oblivious to the emerging Barney and to the booing and derision with which many fans greet the putative Barney.

Soon the two characters are dancing side-by-side. The Chicken abruptly stops his movements when he notices the putative Barney, who keeps dancing beside him. The Chicken gestures to the putative Barney to stop dancing, which he does, and the Chicken slaps the putative Barney across the snout and begins to dance, as if to demonstrate how such dancing is properly done. The Chicken signals to the putative Barney to dance the same way. Instead, the putative Barney again reverts to his characteristic fairylike dancing. In a highly exaggerated fashion, the Chicken slaps the putative Barney once again, gesturing to him to focus on the proper dance moves, which the Chicken again demonstrates for him. This time the putative Barney understands how to dance and outperforms the Chicken's dance moves with a series of highly athletic, disco-dance moves, complete with hand springs, flying splits, and hip gyrations (unlike anything the real Barney would do). The Chicken is stunned and the putative Barney ends the dance in a self-satisfied, standstill pose common of modern rap musicians. The Chicken falls to his knees and bows several times at the putative Barney's feet, kissing them in submission while the putative Barney gloats, taunts his rival, and gestures to the crowd for more applause. The Chicken then rises and offers to hug his companion, but the putative Barney pushes the Chicken to the ground and skips away. The Chicken chases after the putative Barney, jumps through the air and sacks him like a quarterback. He then pins the putative Barney as a wrestler would and stands over him flexing his wings in a body-builder pose. The Chicken then assists the putative Barney to his feet, helps brush the dirt off of him, and the two begin to walk off the field arm in arm as friends. However, when they reach an obstacle, such as a dugout railing, the Chicken sends the unsuspecting putative Barney for a flip over the railing.

Defendants do not provide any disclaimers informing their audience that the putative Barney is not the real Barney or that his use is unauthorized. Giannoulas has been approached by people who believed that the putative Barney was the real Barney. And, complaints have been lodged by parents whose children were allegedly upset by the performance.

Giannoulas designed the sketch to parody a number of characteristics of Barney, including his naive, sappy, and corny personality, his general physical awkwardness, and his simplistic, childish body movements. By placing the putative Barney character in an ego-driven, urban-style rap dance competition and wrestling match, he portrays the character in an original and unexpected light. The Chicken juxtaposes Barney's usual innocence and civility with competitiveness, physical aggression, and rap-singer-inspired hip behavior. Giannoulas intended the parody as a humorous comment on the sheer pervasiveness of Barney. Spectators at sporting events would not normally expect to see the real Barney and the Chicken performing together.

Other than using the putative Barney in the Chicken's live performance, defendants do not use any portion of plaintiff's copyrighted materials or marks in selling their services or merchandise. Defendants do not use any Barney image, name, or combination thereof, to advertise or identify any of their goods or services.

## IV.

### Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party

has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 248, 256, 106 S.Ct. 2505. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). An issue is material only if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons*, 746 F.2d 265, 269 (5th Cir. 1984).

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597, 106 S.Ct. 1348.

## V.

### Lanham Act Violations

■ Plaintiff asserts claims for trademark infringement, false description, unfair competition, and dilution of trademark under the Lanham Act. A trademark or service mark is not a property right, like a copyright or patent, but merely an identifier of source. *Door Sys., Inc. v. Pro–Line Door Sys., Inc.*, 83 F.3d 169, 173 (7th Cir.1996). Liability under the Lanham Act is predicated on use of a trademark in a way that is likely to cause confusion. *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 590 (5th Cir.1993).

■ The court considers the following factors in assessing the likelihood of confusion: (1) the type of trademark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendants' intent, and (7) any evidence of actual confusion. *Elvis Presley Enter., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir.1998). And, in a case like this, parody is an additional factor in the analysis. *Id.; Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 967 (10th Cir.1996); *Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497, 503 (2d Cir.1996). Though not a defense, parody can weigh heavily enough to overcome a majority of the factors measured in assessing likelihood of confusion. *Elvis Presley*, 141 F.3d at 199. As the Second Circuit has noted, because parody is a form of artistic expression protected by the First Amendment, a balancing approach is appropriate. *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing Group, Inc.*, 886 F.2d 490, 493–94 (2d Cir.1989). That is, the court should balance the public interest in free expression against the public interest in avoiding consumer confusion. *Id.*, 886 F.2d at 494.

■ In this case, there is little doubt that Barney is a distinctive, widely recognized trademark. However, the Chicken is also a strong, widely recognized mark readily associated with slapstick physical comedy and satiric ridicule. His brand of humor is widely recognized and enjoyed. Because both marks are strong, well-recognized, and clearly associated in the consumer's mind with a particular, distinct ethic, confusion is avoided. *Hormel*, 73 F.3d at 503. "Indeed, a parody depends on a lack of confusion to make its point." *Id.* Thus, the clarity of defendants' parodic intent, the widespread familiarity with their parodies, and the strength of plaintiff's mark all weigh strongly against the likelihood of confusion as to the source or sponsorship between plaintiff's mark and the putative Barney. *Id.*

The similarity of the marks is determined by comparing the mark's appearance, sound, and meaning. *Elvis Presley*, 141 F.3d at 201. The relevant inquiry is whether, under the circumstances of the use, the marks are sufficiently similar that prospective purchas-

ers are likely to believe that the two users are somehow associated. *Id.* Although Barney and the putative Barney look alike in many respects, there is little likelihood of audience confusion because of the manner in which the putative Barney acts during the skit. Whereas the real Barney is kind, gentle, and loving, the putative Barney engages in fisticuffs with the Chicken and generally behaves in a manner totally foreign to the real Barney.

There is no identity of retail outlets and purchasers. Defendants market the services of the Chicken to sports organizations for the enjoyment of their fans. Plaintiff targets a toddler audience and sells its merchandise at general retail locations. There is no similarity of advertising media, since defendants do not advertise using the Barney mark. Although certain press releases by defendants after the institution of this lawsuit refer to Barney, the releases make clear that Barney is owned by a separate entity that clearly does not approve of the Chicken's antics.[2]

■ A good-faith intent to parody is not an intent to confuse.[3] *Elvis Presley,* 141 F.3d at 203. Although plaintiff does not appreciate defendants' intent, there is no doubt that parody is intended. Defendants' act is not an effort to confuse consumers, but rather to amuse. *Hormel,* 73 F.3d at 505. And, the parody does not simply "use the original [Barney] in a humorous fashion." *Campbell v. Acuff–Rose Music, Inc.,* 510 U.S. 569, 597, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) (Kennedy, J., concurring). Rather, it targets Barney himself and not just the general style, the genre of art to which he belongs, or society as a whole. *Id.* Contrary to what plaintiff urges again and again, any other character, such as Mickey Mouse, could not be substituted in defendants' act to achieve the same effect.

2. In any event, plaintiff does not make any claim against defendants based on their advertising practices. Plaintiff's complaint specifically targets defendants' alleged manufacturing and use of a costume similar or identical to Barney in the Chicken's act. *See, e.g.,* Plaintiff's Complaint at ¶ 20, ¶ 30.

3. In a case like this, there is no presumption of a likelihood of confusion, because defendants are

Finally, the fact that small children, incapable of reasoning, may have been confused by the Chicken's act, does not amount to actual confusion.[4] Here, few people would mistake the putative Barney as anything other than the target of parody. *Cardtoons,* 95 F.3d at 967. The success of the Chicken's skit depends on humorous association, not upon public confusion as to source. *Id.*

Having considered each of the factors of likelihood of confusion, the court can reach no conclusion other than that there is no genuine issue of fact as to a likelihood of consumer confusion. Defendants' use of the putative Barney character is fair because it does not imply sponsorship or endorsement by plaintiff. *New Kids on the Block v. New America Publishing, Inc.,* 971 F.2d 302, 308 (9th Cir.1992). And, applying the balancing approach, free expression clearly prevails in this case. As the First Circuit has noted:

> Trademark parodies, even when offensive, do convey a message. The message may be simply that business and product images need not always be taken too seriously; a trademark parody reminds us that we are free to laugh at the images and associations linked with the mark. The message also may be a simple form of entertainment conveyed by juxtaposing the irreverent representation of the trademark with the idealized image created by the mark's owner.... While such a message lacks explicit political content, that is no reason to afford it less protection under the first amendment. Denying parodists the opportunity to poke fun at symbols and names which have become woven into the fabric of our daily life, would constitute a serious curtailment of a protected form of expression.

*L.L. Bean, Inc. v. Drake Publishers, Inc.,* 811 F.2d 26, 34 (1st Cir.1987).

not selling a competing product with the intent of deriving benefit from the Barney name. *Contra Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 262 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980).

4. Evidence of confusion in this case is slight, as plaintiff relies on hearsay within hearsay to support its argument on this point.

■ Finally, there is no genuine issue of material fact with regard to the issue of trademark dilution. Likelihood of dilution can be established by showing either blurring or tarnishment. *Hormel,* 73 F.3d at 506. Blurring is inapplicable [5] because defendants do not use plaintiff's mark to identify any of their goods or services. If anything, defendants' parody of Barney will tend to increase the public identification of plaintiff's mark with plaintiff. *Id.* And, tarnishment likewise fails to apply. Defendants' skit does not link Barney to products of shoddy quality or portray him in an unwholesome or unsavory context with the result that the public will associate the lack of quality or lack of prestige in defendants' goods with the plaintiff's unrelated goods. *Id.,* 73 F.3d at 507. What makes the act funny is that Barney is such a wholesome, good character and the putative Barney acts like an evil alter ego. Defendants do not seek to ridicule Barney to sell more of their own competitive products. Rather, the parody is of the product itself. Thus, there is no likelihood of dilution under a tarnishment theory.[6] *Hormel,* 73 F.3d at 507–08.

## VI.

### *Infringement of Copyright*

■ Plaintiff alleges that defendants have infringed its copyrights in certain works in which Barney appears by copying and using one or more costumes depicting images substantially similar to the copyrighted elements of plaintiff's works. A copyright infringement is established by showing (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Defendants readily admit that plaintiff holds valid copyrights for material in which Barney appears and that they have used a purple costume bearing a substantial likeness to Barney. Defendants contend that their use of the costume is a non-infringing, fair use of the copyrighted material for the purpose of parodying Barney. Fair use is an affirmative defense; therefore, defendants carry the burden of proof. *Campbell,* 510 U.S. at 590.

■ Parody, like other comment or criticism, may claim fair use. *Id.,* 510 U.S. at 579, 114 S.Ct. 1164; *Fisher v. Dees,* 794 F.2d 432, 435 (9th Cir.1986). Parody is a literary or artistic work that imitates the characteristic style of an author or a work for comic effect or ridicule. *Campbell,* 510 U.S. at 580, 114 S.Ct. 1164.

> For the purposes of copyright law, the nub of the definitions, and the heart of any parodist's claim to quote from existing material, is the use of some elements of a prior author's composition to create a new one that, at least in part, comments on the author's works. . . . If, on the contrary, the commentary has no critical bearing on the substance or style of the original composition, which the alleged infringer merely uses to get attention or to avoid the drudgery in working up something fresh, the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish), and other factors, like the extent of its commerciality, loom larger. Parody needs to mimic an original to make its point, and so has some claim to use the creation of its victim's (or collective victims') imagination . . . .

*Id.,* 510 U.S. at 580–81, 114 S.Ct. 1164. Thus, parody is entitled at least to conjure up the original work, and an even more extensive use of the original would still be fair, providing that the parody builds on the original, using the original as a known element of modern culture and contributing something new for humorous effect or commentary. *Elsmere Music, Inc. v. National Broadcasting Co.,* 623 F.2d 252, 253 n. 1 (2d Cir.1980). And, to be entitled to fair use protection, the parody must target the original work. *Dr. Seuss Enterprises L.P. v. Penguin Books U.S.A., Inc.,* 109 F.3d 1394, 1401 n. 9 (9th Cir.1997).

---

**5.** Plaintiff is not alleging blurring. Plaintiff's response at 14.

**6.** To the extent that plaintiff seems to be urging a strict liability theory of dilution, the court is not persuaded. *See* plaintiff's motion at 28. Such a theory fails to take into account First Amendment considerations. *See Cliffs Notes,* 886 F.2d at 493–94.

■ In assessing fair use, courts consider: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for, or value of, the copyrighted work. *Campbell,* 510 U.S. at 577, 114 S.Ct. 1164.

■ Applying the first factor analysis, the court inquires whether defendants' act may reasonably be perceived as a new work that at least in part comments on plaintiff's Barney character. *Leibovitz v. Paramount Pictures Corp.,* 137 F.3d 109, 114 (2d Cir. 1998). Here defendants' use of the putative Barney adds something new and qualifies as a transformative work through its comic effect and ridicule of Barney. The parody works on different levels. First, the skit pokes fun at Barney's pervasive commercial presence. The putative Barney appears in an unexpected arena, an evening performance of the Chicken at a sporting event. Even the Chicken cannot get away from Barney. The parody then moves to another level as the lovable, sissy Barney character transforms into an egotistical urban rapper, ultimately physically assaulting and taunting his rival, the Chicken.

The second factor is the nature of the copyrighted work. Defendants recognize the creative nature of Barney. However, as the Supreme Court has recognized, the creative nature of an original will normally not provide much help in determining whether a parody of the original is fair use. *Campbell,* 510 U.S. at 586, 114 S.Ct. 1164; *Leibovitz,* 137 F.3d at 115.

The court next considers whether the amount and substantiality of the portion used in relation to the copyrighted work as a whole are reasonable in relation to the purpose of the copying. *Campbell,* 510 U.S. at 586, 114 S.Ct. 1164. In a case like this one, the parodist must be able to conjure up at least enough of the original to make the object of the critical wit recognizable. *Id.,* 510 U.S. at 588, 114 S.Ct. 1164. And, once enough has been taken to assure identification, the reasonableness of taking additional aspects of the original depends on the extent to which the overriding purpose and character of the copy is to parody the original. *Id.; Leibovitz,* 137 F.3d at 116. Here, defendants use a purple costume and the gentle rocking from side to side to make their character recognizable to the audience. Defendants have not duplicated the real Barney costume, used any of plaintiff's other related characters, or taken any words, phrases, music, or songs from plaintiff's works. They simply conjure up enough of the original Barney to make the audience recognize the character.

Finally, the court considers interference with any potential market for plaintiff's original and derivative works caused by defendant's actions. *Campbell,* 510 U.S. at 590, 114 S.Ct. 1164. Plaintiff has conceded that it is not seeking any actual damages resulting from lost revenues or lost profits caused by defendants' actions. Nor does plaintiff intend to offer any documents or evidence showing actual lost revenues or profits because "it is impossible to identify with any degree of specificity any lost revenues or lost profits from [plaintiff's] financial documents." Plaintiff's response to defendants' motion to compel (filed July 6, 1998) at 1. There is no presumption of market harm. *Campbell,* 510 U.S. at 590, 114 S.Ct. 1164. And, this case presents a parody pure and simple and not a work of more complex character with effects in protectable markets for derivative works, too.[7] *Id.,* 510 U.S. at 592, 114 S.Ct. 1164. Thus, the fourth factor weighs in favor of defendants.

Putting all the factors together, no conclusion can be reached except that defendants have fairly used elements of plaintiff's copyrighted works.

### VII.

### *ORDER*

For the reasons discussed herein,

---

**7.** Even if it could be said that this is a complex case, plaintiff admits that Barney threw out the opening pitch at a major league baseball game between the Oakland Athletics and the Boston Red Sox in early April 1998. Plaintiff's motion at 7. This shows that Barney's ability to move into the sporting events market has not been hampered by defendants' act.

The court ORDERS that defendants' motion for summary judgment be, and is hereby, granted; that plaintiff take nothing on its claims against defendants; and that such claims be, and are hereby, dismissed with prejudice. The court further ORDERS that plaintiff's motion for partial summary judgment be, and is hereby, denied. The court further ORDERS that plaintiff's motion to compel and the joint motion to extend discovery deadline be, and are hereby, denied as moot.

### FINAL JUDGMENT

In accordance with the court's memorandum opinion and order of even date herewith,

The court ORDERS, ADJUDGES and DECREES that plaintiff, Lyons Partnership, L.P., take nothing on its claims against defendants, Ted Giannoulas and TFC, Inc., and that such claims be, and are hereby, dismissed with prejudice. The court further ORDERS, ADJUDGES and DECREES that defendants have and recover their court costs from plaintiff.