**J & J MANUFACTURING, INC., Plaintiff,**

v.

**James P. LOGAN, Defendant.**

**No. 1:98CV1689(TH).**

United States District Court, E.D. Texas, Beaumont Division.

Sept. 18, 1998.

---

Kip Kevin Lamb, Beaumont, TX, William D. Raman, Austin, TX, John C. Cain, Houston, TX, for Plaintiff.

Joseph L. Lemoine, Jr., Lafayette, LA, Timothy Dillard Lambert Lafayette, LA, Timothy John McNamara, Lafayette, LA, for Defendant.

## MEMORANDUM AND OPINION ORDER

HEARTFIELD, District Judge.

Currently before this Court is Defendant's *Motions Under Rule 12* [5]. The Court, hav-ing considered the motions and responses, hereby DENIES all of Defendant's *Motions Under Rule 12* [5].

### 1. Procedural History

On June 19, 1998 the Plaintiff brought this action for correction of inventorship and patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, false designation of origin and false description under the Trademark Laws of the United States, 15 U.S.C. § 1501 *et seq.*, fraud, and conversion. On August 3, 1998, Defendant made several *Motions Under Rule 12* [5]. Such Rule 12 motions included: (1) a motion under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted as to Plaintiff's patent and trademark-related claims; (2) a motion under Fed. R.Civ.P. 12(b)(1) for dismissal for lack of subject matter jurisdiction as to the remaining claims (fraud and conversion) of the Plaintiff; (3) and, alternatively, that Plaintiff be required to make a more definite statement regarding its patent and trademark-related claims. This Court hereby DENIES all of *Defendant's Motions Under Rule 12* [5].

### 2. Facts

For the past several years Plaintiff J & J Manufacturing Company, Inc. ("J & J") has been designing and manufacturing a variety of machines having electrical, mechanical, pneumatic, and hydraulic components. In early 1985, James P. Logan, Jr. ("Logan") approached J & J in search of a spiral meat slicer that incorporated hydraulic components.[1] According to Plaintiff J & J, J & J designers and owners James R. Hayes, Jerry Junot, and Lionel Stewart, "conceived, designed, developed, and manufactured a new spiral meat slicing device ... [and] assigned all rights of ownership associated with the spiral meat slicing device to J & J." *Plaintiff's Original Complaint and Request for Preliminary and Permanent Injunction* ("Plaintiff's Original Complaint") 2.

---

1. Specifically, Logan wanted a hydraulic meat slicer for slicing ham that overcame problems with hydraulic meat slicers used in the past.

Logan bought four of the meat slicing machines from J & J; and J & J's designer Lionel Stewart visited Logan in 1985 to ensure that the first machine was operating properly. According to Plaintiff J & J, Logan led J & J to believe they would be entering a partnership whereby J & J would manufacture the meat slicers and Logan would market them to the public. In anticipation of that partnership, J & J provided Logan with technical engineering drawings that detailed the mechanical and electrical components of the meat slicing device. In November 1985, J & J gave Logan a seven-page document entitled "Ham Slicer Model 1358." Apparently, all drawings and brochures were, according to J & J, provided to Logan in connection with Logan's purchase of the four meat slicing machines and the contemplated partnership between the parties. In early 1986, Logan ceased all communication with J & J; consequently, J & J assumed Logan simply lost interest in the project and discontinued marketing the meat slicing machine. Quite the contrary.

On April 18, 1989, Logan was granted United States Patent No. 4,821,635 ("the '635 patent") for a device entitled a "Meat Slicing Apparatus." Even though J & J designers and employees allegedly designed the apparatus and assigned all rights to J & J, Logan named himself as sole inventor. Furthermore, Plaintiff J & J avers that Logan used its drawings and brochures substituting the name "Logan Farms, Inc." in place of "J & J Manufacturing Co., Beaumont, Texas," and distributed them to third parties without J & J's permission. Slicing through it all, Plaintiff J & J's allegations boil down to this: Logan stole J & J's meat slicer and its designs.

Specifically, Plaintiff J & J sued Defendant Logan under the following causes of action: (1) change of inventorship; (2) wrongful appropriation; (3) patent infringement; (4) false designation of origin, false description; (5) fraud; and (6) conversion. Shortly thereafter, Defendant Logan moved this Court to dismiss this suit in its entirety pursuant to several Rule 12 motions. This Court will now address each of those motions.

### 3. Rule 12(b)6 Motion to Dismiss Standard

A Rule 12(b)6 motion to dismiss for failure to state a claim "is viewed with disfavor and is rarely granted." *Sosa v. Coleman,* 646 F.2d 991, 993 (5th Cir.1981). "In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996); *Partridge v. Two Unknown Police Officers of the City of Houston, Texas,* 791 F.2d 1182, 1185–86 (5th Cir.1986); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In this case, Defendant Logan's Rule 12(b)6 motion to dismiss as to the patent and trademark claims, if granted, would deprive this Court of jurisdiction.

> When a motion to dismiss challenges both the Court's jurisdiction, 12(b)(1), and the existence of a federal cause of action, 12(b)(6), the *Bell v. Hood* standard is applied and the motion is treated as a direct attack on the plaintiff's case. In reviewing such a 12(b)(6) motion, [the court accepts] as true, all well-pled allegations, resolving all doubts in favor of the complainants.

*Tanglewood East Homeowners v. Charles–Thomas, Inc.,* 849 F.2d 1568, 1572 (5th Cir. 1988). This Court must accept as true all of Plaintiff J & J's well-pled allegations, resolving all doubt in favor of Plaintiff J & J. This Court may dismiss Plaintiff J & J's lawsuit only if it finds Plaintiff J & J is not entitled to recover under any state of facts which could be mustered to support its claim.

> Over and over and over—but apparently not enough—[the Fifth Circuit] has stated, explained, reiterated, stressed, rephrased, and emphasized one simple, long-established, well-publicized Rule of Federal Practice: a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim.

*Rios v. Dillman,* 499 F.2d 329, 330 (5th Cir.1974).

In support of its Rule 12(b)(6) motion to dismiss, Defendant Logan has provided several attachments including a signed "Agreement" between Plaintiff J & J and Defendant Logan.[2] However, "the court may not look beyond the pleadings in ruling on the [12(b)(6)] motion." *Baker,* 75 F.3d at 196. Were this court to look beyond the pleadings in deciding a Rule 12b(6) motion, its decision would be akin to an order granting a summary judgment. *Baker,* 75 F.3d at 197; *Partridge,* 791 F.2d at 1189; *Estate of Smith v. Tarrant County Hosp. Dist.,* 691 F.2d 207, 208 (5th Cir.1982). Moreover, if this Court considered the evidence presented by Defendant Logan outside of its pleadings, then Plaintiff J & J would need a reasonable opportunity to present material it believes pertinent to the "summary judgment" motion.

> If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, *and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.*

Fed.R.Civ.P. 12(b) (emphasis added). Therefore, in ruling on the Rule 12(b)(6) motion before this Court, the matters presented that are outside the well-pled allegations of the parties shall be ignored.[3] This Court bases its decision on the well-pleaded allegations of the parties viewed in the light most favorable to Plaintiff J & J.

**2.** Defendant's *Memorandum in Support of Rule 12 Motions* also includes an affidavit from James P. Logan, Jr. and an abstract for United States Patent Number 4,821,635 (the patent abstract names James P. Logan, Jr. as inventor of the "meat slicing apparatus").

**3.** This is not to say that the attachments lend no credence to the Defendant's position; it is just to say that no credence can be paid to them in ruling on the Rule 12(b)(6) motion currently before this Court.

**4.** Other defendants have seized upon the word "solely" to maintain that § 256 prevents the court from hearing claims other than the correc-

### 4. Rule 12(b)(6) Motion to Dismiss Patent Claims

Count I of Plaintiff J & J's Complaint seeks relief under 35 U.S.C. § 256 which provides:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing or all parties concerned and the Commissioner shall issue a certificate accordingly.

■ Defendant's Rule 12(b)(6) motion to dismiss Count I of Plaintiff's Complaint can be readily disposed by the Federal Circuit's decision in *MCV, Inc. v. King–Seeley Thermos Co.:*

> [Section 256] prescribes only one prerequisite to judicial action: all parties must be given notice and an opportunity to be heard. *If that is done, there is subject-matter jurisdiction in the district court over a dispute raising solely a joint inventorship issue among contending co-inventors.*[4]

tion of inventorship claim. The Eastern District of Michigan adequately disposed of this argument:

> Additionally, Defendants latch on to the MCV court's statement that § 256 confers subject matter jurisdiction in the district court "over a dispute raising solely a joint inventorship issue among contending co-inventors." Defendants interpret this statement to mean that the action cannot involve any claims other than correction of inventorship. However, this court understands the MCV court as saying that § 256 is sufficient to confer subject matter jurisdiction over a correction of inventorship issue, even in those cases where the complaint fails

870 F.2d 1568, 1570, 10 U.S.P.Q.2d 1287, 1289 (Fed.Cir.1989); *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 43 U.S.P.Q.2d 1321 (Fed.Cir.1997). The district court in *Stark* faced claims similar to the ones currently before this Court. There, the plaintiff sued a corporation alleging fraud and seeking correction of inventorship of six patents. Citing *MCV, Inc. v. King–Seeley Thermos Co.*, the court recognized "that the only procedural prerequisites to maintain a correction action in district court are notice and an opportunity for all parties to be heard."[5] *Id.* In *Stark* the plaintiff doctor sought complete substitution of one of the patents pursuant to Section 256; specifically, he sought to completely delete the named inventors of the '183 patent and substitute his own name. "Section 256

merely precludes any deceptive intention in the inventor that seeks to be restored to a rightful place in the patent. Therefore, as to the '183 patent, section 256 *allows complete substitution of inventors* as long as the true inventors are without deceptive intent." *Id.* at 1556 (emphasis added). Plaintiff J & J similarly seeks to delete the named inventor, James P. Logan, Jr., and substitute the names of its employees and designers on the '635 patent.[6] *Plaintiff's Original Complaint* 7. That is, Plaintiff J & J seeks complete substitution of inventorship of patent '635. Its Complaint provides notice and opportunity for all parties to be heard.[7] Therefore, this Court has subject matter jurisdiction over this dispute that raises a ques-

---

to allege that federal patent law creates the cause of action or that a plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law. *FFOC Co., v. Invent A.G.*, 882 F.Supp. 642, 650–51 (E.D.Mich.1994).

5. Resolving a considerable amount of ambiguity explored by district courts regarding intent in a correction action pursuant to Section 256, *Stark* further held "that the proper focus of a Section 256 hearing is not on the intent of the named inventors. Instead, correction of inventorship under Section '256 'only requires an inquiry into the intent of the nonjoined inventor.' ... Section '256 'allows complete substitution of inventors as long as the true inventors are without deceptive intent.' " *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 12 F.Supp.2d 69 (D.Mass.1998) (citations omitted) (citing *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 43 U.S.P.Q.2d 1321 (Fed.Cir.1997)). Although Plaintiff J & J does not explicitly allege it is free from deceptive intent, it is obvious from its Complaint that this is, in essence, what Plaintiff J & J alleges. *See* Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice.") *Stark's* allowance of complete substitution of inventorship based only upon inquiry into the intent of true inventor will later play a key role in permitting a true inventor successful at complete substitution under Section 256 to recover damages for past infringement from named inventors found to have acted with deceptive intent.

6. Specifically, Plaintiff J & J seeks to delete James P. Logan, Jr. and substitute the following names: James R. ("Toby") Hayes, Jerry Junot, and Lionel Stewart. All of these individuals are either J & J's owners or designers who have assigned their rights of ownership associated with the meat slicing machine to Plaintiff J & J. *Plaintiff's Original Complaint* 2, 7.

7. The *Stark* court noted that many district courts applied substantive standards in corrective inventorship claims. For example, in *Bemis v. Chevron Research Co.*, the Ninth Circuit Court of Appeals faced an action similar to Plaintiff J & J's correction action. 599 F.2d 910 (9th Cir. 1979), cert. denied 444 U.S. 966, 100 S.Ct. 454, 62 L.Ed.2d 378. There, Bemis sought relief under 35 U.S.C. § 256 alleging that he—and not the two defendants—was the true inventor of the patent. The Court affirmed the lower court's dismissal of the action: "Section 256, though remedial in character, is limited in effect and cannot properly be the vehicle for substituting inventors on a patent in a claim sounding in conspiracy and fraud." *Id.* at 912.

> The *Commentary on the New Patent Act*, which precedes the text of Title 35 in United States Code Annotated, explains that, while § 256 permits the deletion of a person named in a patent as a joint inventor or the addition of a person who is in fact a joint inventor, it does not reach to the substitution of one sole inventor for another ...
>> It would not be possible under this section to change a patent which was issued with A as the sole inventor to one naming B as the sole inventor.

*Bemis*, 599 F.2d at 912 (citing 35 U.S.C.A. § 256 at 50). Similarly applying a substantive standard to correction actions, another court remarked that "title 35, U.S.Code, Section 256, is limited to the correction of errors involving true joint inventorship and does not contemplate or permit what would amount to a substitution of one inventor entity for another under the guise of 'correction.' " *Rival Mfg. Co. v. Dazey Products Co.*, 358 F.Supp. 91 (W.D.Mo.1973). Suffice it to say that Plaintiff J & J's Complaint, viewed in the light most favorable to Plaintiff J & J, satisfies the less stringent—and more current—prerequisites prescribed in *Stark*.

tion of inventorship of the '635 patent.[8] *See also Dee v. Aukerman,* 625 F.Supp. 1427, 1430 (S.D.Ohio 1986) ("This court sees no persuasive reason that § 256 should not be read as conferring subject matter jurisdiction over this [patent correction] case."). Defendants Rule 12(b)(6) motion to dismiss Count I of Plaintiff's Complaint ("Correction of Inventorship") is therefore DENIED.

The Court next turns to Count III ("Patent Infringement") of the Plaintiff's Complaint. In that count Plaintiff J & J alleges that "Logan has infringed and continues to infringe without authority, the '635 patent by making, using, selling or offering to sell, products in the United States that implement the claimed invention(s) of the '635 patent in violation of 35 U.S.C. § 271." *Plaintiff's Original Complaint* 4. Defendant moves this Court to dismiss this patent infringement claim "as J & J cannot maintain an action for patent infringement occurring prior to the time they were declared to have *legal title* (as opposed to purely equitable title) to the '635 patent." *Memorandum in Support of Rule 12 Motions* 4. Plaintiff counters that "J & J's patent infringement claim rests on J & J's underlying inventorship claim ... [B]ecause the Court cannot dismiss J & J's inventorship claim at this juncture in the proceeding, neither can it dismiss J & J's infringement claim." [9] *Plaintiff J & J Mfg. Co., Inc.'s Memorandum in Opposition to Defendant's Motions Under Rule 12* 6.

■ "The general rule is that one seeking to recover money damages for infringement of a United States patent (an action 'at law') must have held legal title to the patent during the time of infringement." *Arachnid, Inc. v. Merit Industries, Inc.,* 939 F.2d 1574, 1579 (Fed.Cir.1991); *Pfizer Inc. v. Elan Pharmaceutical Research Corp.,* 812 F.Supp. 1352, 1356 (D.Del.1993); *Curtis Mfg. Company, Inc. v. Plasti–Clip Corporation,* 933 F.Supp. 94 (D.N.H.1995). Defendant Logan's position is quite simple—Plaintiff J & J is not now nor has it ever been the "legal title" owner of patent '635; therefore, Plaintiff J & J lacks standing to sue for patent infringement and the case should be dismissed.[10] Enter *Arachnid, Inc. v. Merit Industries, Inc.* 939 F.2d 1574 (Fed.Cir.1991).

Arachnid, Inc. ("Arachnid") manufactured electric dart games. *Arachnid,* F.2d 1574, 1577. It entered into an agreement with Industrial Design Electronic Associates ("IDEA") whereby IDEA would provide consulting services to Arachnid for the improvement of its computerized scoring system of dart games. *Id.* The written agreement provided that any inventions conceived by IDEA or its employees during the project would belong to Arachnid. *Id.* Shortly after the agreement was terminated, IDEA's president and two other employees filed a patent application for—you guessed it—a coin operated dart game controlled by two microprocessors.[11] *Id.* Arachnid sued IDEA and the jury found that "the invention of the '781 patent had been conceived while IDEA was under contract to Arachnid." *Id.* Accordingly, the judge ordered the '781 patent assigned to Arachnid. *Id.* Meanwhile, "IDEA had granted a non-exclusive license to Merit to practice the invention of the '781 patent." [12] *Id.* So, Arachnid sued Merit and the judge directed a verdict of infringement by Merit. *Id.* Following the instruction by the court to enter a judgment of infringement by Merit and determine damages, the jury

---

**8.** This Court once again notes that Defendant's *Brief in Support of its Rule 12 Motions* includes considerable argument that there is no way that J & J employees could have been co-inventors of the '635 patent because the meat slicing machine was not invented until after Logan and J & J had ceased their relationship. While this unverified argument may indeed prove true, it is not proper for this Court to consider in ruling on a Rule 12(b)(6) motion to dismiss. Hence, it is disregarded for present analysis.

**9.** Both parties cite *Arachnid, Inc. v. Merit Industries, Inc.* to support their respective positions.

939 F.2d 1574 (Fed.Cir.1991). As developed later, this Court adopts the Plaintiff's reading of that case.

**10.** Turn out the lights and let's go home (were it so easy).

**11.** For those who are curious, prior dart games had only one microprocessor.

**12.** And practice the '781 patent Merit did. Merit manufactured and sold several hundred of the dart machines using dual microprocessors.

awarded Arachnid damages for past infringement of the '781 patent. *Id.*

The United States Court of Appeals overturned the jury award and found that Arachnid did not have standing to recover money damages for past infringement because Arachnid was not the *legal* title owner of the '781 patent. *Id.* at 1582. So far, so good. However, the court alluded to a line of cases that give federal court's jurisdiction to hear suits brought by adjudged equitable title holders brought pursuant to United States Patent Laws. Specifically, the *Arachnid* court held "a federal district court has jurisdiction to determine a 'claim for infringement,' asserted by an adjudged equitable title holder, as a prerequisite to awarding equitable relief for that infringement." *Arachnid*, 939 F.2d at 1580. It is these words that Plaintiff J & J seizes upon to argue that it has standing in this court since it seeks not only monetary damages, but equitable relief as well.[13]

 Plaintiff J & J is not an "adjudged equitable title holder;" rather, it asks this Court to first *adjudge* it to be an equitable title holder, and then award it relief pursuant to its equitable title. The question, then, becomes whether this Court has jurisdiction over a claim of patent infringement by a party that has yet to be the equitable title holder to the patent. Several courts, struggling with various interpretations of the *Arachnid* phraseology, have skirted the issue of whether a party who is not yet an "adjudged" equitable title holder can still invoke federal court jurisdiction based upon a patent infringement claim.

In *Pfizer, Inc. v. Elan Pharmaceutical Research, Corp.*, the court considered the import of the *Arachnid* language. 812 F.Supp. 1352, 1356 (D.Del.1993). There, the Plaintiff asserted standing to sue for patent infringement based upon an alleged assignment of patent rights to the Plaintiff pursuant to a licensing agreement. *Id.* The court noted that "Pfizer has not alleged that it is the owner of the patent. In fact, Pfizer alleges that Bayer owns the entire right, title, and interest in and to the invention contained in the '986 patent ... Clearly,

Pfizer must allege that its standing to sue for infringement arises from a source other than legal title to the patent." *Id.* at 1386–87. In a footnote, the court said "[a]lthough Arachnid recognized that a determination of standing may differ when equitable relief is sought, the cases cited and distinguished by the court for this proposition involved 'equitable title holders' seeking injunctive relief." *Id.* Since Plaintiff Pfizer based its standing upon the alleged agreement and not upon a claim of legal title to the patent, the court found the *Arachnid* loophole irrelevant and thus declined to use it. *Id.*

However, in *Curtis Manufacturing Co., Inc. v. Plasti–Clip Corporation*, the United States District Court of New Hampshire looked the *Arachnid* loophole squarely in the eye (even though jurisdiction was not in question). 933 F.Supp. 94 (D.N.H.1995). There, the manufacturer of a plastic clip document holder device brought an action against its competitors for patent infringement, fraudulent procurement of patent, and various common-law tort claims. *Id.* In their final pretrial statement the plaintiffs indicated that if the patent in issue was indeed assigned to them, then they would seek damages for the time period which the defendant held legal title to the patent. The court noted that:

> The problem presented here is that plaintiffs, *as purported equitable title holders of the '078 patent*, seek damages for infringement of the patent by Curtis during a time period when Curtis held legal title to the '078 patent ... [A]ssignment of the allegedly malappropriated patent is among the equitable remedies available to plaintiff under the circumstances of this case. However, plaintiffs have not provided, nor has this court uncovered, any authority to support plaintiffs' position that such an assignment can be retroactive, thereby giving plaintiffs the right to then seek damages for past infringement of the patent, which is a remedy at law ... The court finds and rules that if plaintiffs receive an equitable assignment of the '078 patent, they are not then entitled to seek a reme-

13. Plaintiff J & J has requested a considerable amount of equitable relief including a change of inventorship, a preliminary injunction, a permanent injunction, and an assignment of rights.

dy at law for infringement of the patent by Curtis for the time period prior to the date of the assignment. Plaintiffs are, however, entitled to seek full redress against Curtis in the form of equitable relief for that time period.

*Curtis,* 933 F.Supp. at 101–102 (D.N.H.1995) (emphasis added). It is worth noting that the district court was reviewing a patent interference action previously brought in the Patent and Trademark Office; and, as a result of this procedural posture, jurisdiction in the federal court was not at issue. Nevertheless, the court did provide the current analysis with a new term of art: "purported equitable title holder." Plaintiff J & J is precisely that: a "purported equitable title holder" of the '635 patent for the meat slicing machine.

■ So, where does that leave Plaintiff J & J? It argues that it escapes the web of *Arachnid* through the loophole since it seeks "equitable" relief in addition to monetary damages, or "at-law" relief. This Court agrees. Plaintiff J & J is a purported, equitable title holder seeking both equitable and at-law relief from this Court. Specifically, in addition to its request for a preliminary and permanent injunction, Plaintiff J & J seeks the equitable relief of "Change of Inventorship" pursuant to 35 U.S.C. § 256. "This section is a savings provision. If a patentee demonstrates that inventorship can be corrected as provided for in section 256, a district court must order correction of the patent, thus saving if from being rendered invalid." *Pannu v. Iolab Corp.,* 155 F.3d 1344 (Fed.Cir.1998). When an inventor is omitted from a patent through no deceptive intent of his own, he may bring—and a federal court may hear—a Section 256 change of inventorship action. *Stark* 119 F.3d at 1556. Moreover, if the court changes inventorship of a patent pursuant to the proper

invocation of Section 256 and completely replaces named inventors with a newly substituted, innocent inventor or group of inventors, then the newly installed inventor or group of inventors may seek damages for infringement by the removed named inventors who acted with deceptive intent. If this Court changes patent '635 to reflect inventorship of Plaintiff J & J and non-inventorship by Defendant Logan, and if it is found that Plaintiff J & J's owners and designers acted without deceptive intent while Defendant Logan acted with deceptive intent, then Plaintiff J & J would indeed be entitled to damages for the infringement of the freshly corrected patent saved from invalidity by the proper invocation of 35 U.S.C. § 256.[14] Defendant Logan's motion to dismiss Plaintiff J & J's claim for damages for patent infringement is, accordingly, DENIED.

### 5. Rule 12(b)(6) Motion to Dismiss Trademark–Related Claims

In Count IV of its Complaint Plaintiff J & J asserts claims for false association/designation of origin under 15 U.S.C. § 1125(a)(1)(A) and false advertising under 15 U.S.C. § 1125(a)(1)(B) (the "Lanham Act"). *Plaintiff's Original Complaint* 5. Defendant Logan has moved this Court to dismiss these Lanham Act claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

■ "Liability under the Lanham Act is predicated on use of a trademark in a way that is likely to cause confusion." Lyons *Partnership v. Giannoulas,* 14 F.Supp.2d 947, 952 (N.D.Tex.1998).

The Lanham Act's prohibitions against a false description or false designation of origin primarily extend to two types of activities: (1) the false advertising of goods or services; and (2) "palming off," which involves selling one's goods under the

---

**14.** If Plaintiff J & J acted without deceptive intent and Defendant Logan acted with deceptive intent, then there is little justification for refusing Plaintiff J & J recovery for infringement of a patent saved from invalidity by the proper invocation of Section 256. Pursuant to *Stark's* holding that complete substitution of inventors is possible under Section 256 so long as the true inventors acted without deceptive intent, Defendant inventors found to have acted with decep-

tive intent can no longer seek shelter in the oft cried "but he didn't have *legal* title to the patent" in order to avoid paying damages for infringement. Otherwise, named inventors acting with deceptive intent would avoid damages for patent infringement simply because their deceptive intent prevented the patent from being valid and protecting the innocent inventor. The *Stark* decision prevents such an inequitable result.

name of a competitor. However, it also reaches merchandising practice or conduct that are " 'economically equivalent' to palming off." Such practices include a false designation of origin through "reverse palming off," which may be accomplished by "remov[ing] or obliterat[ing] the original trademark, without authorization, before reselling goods produced by someone else."

*Roho Inc. v. Marquis*, 902 F.2d 356, 359 (5th Cir.1990). Here, Plaintiff J & J alleges that Defendant "Logan has made unauthorized reproductions of the drawing and brochure [entitled Ham Slicer Model 1358]; substituted the name 'Logan Farms, Inc.' in place of J & J Manufacturing Co., Beaumont, Texas' in the title block of at least one of the drawings; has distributed copies of the drawings to third parties without J & J's permission; and, has represented himself (or his company) as the author or originator of the drawings." *Plaintiff's Original Complaint* 3. *Truck Equipment Service Co. v. Fruehauf Corp.* is particularly on point for current analysis. 536 F.2d 1210 (8th Cir.1976), cert. denied 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). There, farm equipment manufacturer Fruehauf advertised with photographs of its competitor's grain trailer, the Cornhusker 800.[15] *Id.* The court upheld the district court's finding "that the use by Fruehauf of photographs of the Cornhusker 800 in its sales literature was unfair competition. Its finding that *this constituted a false representation of origin* is supported by the record. Similar conduct has been frequently found to be violative of § 43(a) of the Lanham Act." *Id.* at 1221 (emphasis added). Here, Plaintiff J & J alleges that Defendant Logan similarly malappropriated its brochure for advertising purposes. Accordingly, Defendant Logan's motion to dismiss Plaintiff J & J's false association/designation of origin claims is DENIED.

▇ Next, Defendant Logan moves to dismiss Plaintiff J & J's false advertising claims since such claims "may be brought *only* by competitors of Logan, and such

claims cannot be maintained by a party (such as J & J) whose products do not compete with the product which is the subject of the complained of acts." *Memorandum in Support of Rule 12(b) Motions* 8 (citing *Fuller Bros., Inc. v. International Mktg., Inc.*, 160 F.R.D. 597 (D.Or.1995)). However, viewing the pleadings in the light most favorable to the Plaintiff, Plaintiff J & J has indeed alleged sufficient facts to support the false advertising cause of action. In its brief in response to Defendant's motion to dismiss, Plaintiff J & J lays out the support for the claim:

> In paragraph 8, J & J alleges that is sold four meat slicing machines that J & J's designers had invented and manufactured. In paragraphs 13–15, J & J alleges that the '635 patent covers those meat slicing machines. And, in paragraph 19, J & J alleges that Defendant makes and sells meat slicing machines that are covered by the '635 patent. These facts alone, if true, provide support for the allegation that J & J and Defendant are potential competitors with respect to sales of meat slicing machines covered by the '635 patent.

*Plaintiff J & J Mfg. Co., Inc.'s Memorandum in Opposition to Defendant's Motions Under Rule 12* 9. This Court agrees. Viewing the pleadings in the light most favorable to Plaintiff J & J, Plaintiff's Original Complaint adequately alleges facts to support its position as a competitor with Defendant Logan, thereby supporting its cause of action for false advertising.[16] Accordingly, Defendant Logan's motion to dismiss Plaintiff J & J's false advertising claim is DENIED.

### 6. Rule 12(b)(6) Motion to Dismiss Pendent State Claims

Finally, since this Court continues to have jurisdiction over Plaintiff J & J's patent and trademark related claims, it should not dismiss the remaining, pendent claims for wrongful appropriation, fraud, and conversion. Accordingly, Defendant Logan's mo-

---

**15.** Sorry, photo unavailable.

**16.** Nonetheless, this Court notes that this confusion could have been avoided if Plaintiff J & J

had simply and explicitly alleged that it was a competitor of Defendant Logan.

tion to dismiss these pendent causes of action is DENIED pursuant to 28 U.S.C. § 1367(a).

### 7. Motion for Dismissal for Improper Venue

Lastly, Defendant Logan moves to dismiss Plaintiff J & J's case in its entirety for improper venue. "Because J & J is not asserting jurisdiction of this Court based solely on diversity of citizenship (and in fact cannot, as both J & J and Logan are citizens of the State of Texas), venue is proper *only* in the districts specified in 28 U.S.C. § 1391(b)." *Memorandum in Support of Rule 12(b) Motions* 13. Plaintiff counters that a substantial part of the events or omissions giving rise to its claim occurred within the Eastern District of Texas.

Title 28 U.S.C. § 1391(b) holds:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) *a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated,* or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b) (emphasis added). Clearly, Plaintiff J & J seeks to establish venue under the second method emphasized above. Accepting as true the well-pled allegations of Plaintiff J & J, Defendant Logan approached Plaintiff J & J in the Eastern District of Texas in order to procure the services of the machine manufacturer. All of the machinery at issue (specifically, the meat slicer allegedly taken from J & J) was conceived, designed, and manufactured in the Eastern District of Texas. Finally, the brochure that forms the basis for the false advertising and false association/designation of

origin claim was itself created by J & J in the Eastern District of Texas. Defendant Logan counters that he lives in the Southern District of Texas and his place of business is in the Southern District of Texas. Therefore, venue is proper only in the Southern District of Texas. Not so.

■ In *Sanders v. Seal Fleet, Inc.* the court faced a similar venue challenge. There, one of the defendants, Southern States, argued venue was improper in the Eastern District of Texas since no defendant lived or maintained an office in the district:

Southern States has offered evidence that no defendant had or maintained an office within the Eastern District of Texas. Therefore, according to Southern States, no defendant is a resident of the Eastern District of Texas and thus venue is improper under 28 U.S.C. § 1391(b). However, there is evidence that a substantial part of the events giving rise to this claim occurred in the Eastern District of Texas. Thus, there is a *prima· facie* case that venue is proper under § 1391(b)(2).

*Sanders v. Seal Fleet, Inc.*, 998 F.Supp. 729, 737 (E.D.Tex.1998). Here, Plaintiff J & J alleges that Defendant Logan approached it in the Eastern District of Texas under the guise of establishing a partnership of marketing and manufacturing meat slicers. After buying a few meat slicers from Plaintiff J & J, Defendant Logan simply ceased all communication with Plaintiff J & J. A few years later, Defendant Logan obtained a United States Patent for a meat slicing machine. Moreover, Defendant Logan allegedly took Plaintiff J & J's brochures and manuals and tried to pass them off as its own. The fact that Defendant Logan individually resides in the Southern District of Texas and that his business is likewise situated in the Southern District of Texas does little to negate the fact that he allegedly took something from the Eastern District of Texas and tried to market it as his own.[17] Accordingly, Defendant

---

17. This Court also notes that, accepting Plaintiff's allegations as true, Defendant Logan apparently visited the Eastern District of Texas, picked up a few meat slicing machines and brochures, and then returned to the Southern District of Texas where he allegedly misappropriated that

technology and literature. Now, Defendant Logan wishes, once again, to return to the open arms of the Southern District of Texas under the guise of his individual and office residency. Suffice it to say that Plaintiff J & J's prima facie case for proper venue remains in tact.

Logan's motion to dismiss for improper venue is DENIED.

### 8. Defendant's Rule 12(e) Motion for a More Definite Statement

 In the alternative Defendant Logan moves this Court to order Plaintiff J & J to make a more definite statement. "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed.R.Civ.P. 12(e). "If a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, the proper remedy is a motion for more definite statement under Rule 12(e) F.R.C.P." *Sisk v. Texas Parks and Wildlife Dept.*, 644 F.2d 1056, 1059 (5th Cir.1981) (citing 5 Wright & Miller, Fed. Practice & Procedure: Civil s 1356 at 590–591). However, pursuant to Federal Rule of Civil Procedure 8(a), the Plaintiff's complaint need only contain a "short and plain statement of the claim showing the pleader is entitled to relief." Thus, a motion for more definite statement is generally disfavored by the courts.

 Plaintiff J & J sued Defendant Logan for change of inventorship, wrongful appropriation, patent infringement, false designation of origin and false description, fraud, and conversion. Plaintiff J & J bases its claims upon its relationship with Defendant Logan which began in 1985 or early 1986. Plaintiff J & J alleges it sold four meat slicing machines to Defendant Logan and, in turn, Defendant Logan used those machines to procure the '635 patent. Furthermore, Plaintiff J & J points to specific documents and brochures and alleges that Defendant Logan redacted J & J's name and replaced it with "Logan Farms, Inc."

Plaintiff's Complaint is rife with specific facts and dates forming the basis of its claims against Defendant Logan. This Court can not say that Plaintiff J & J's Complaint is so vague, ambiguous, and unintelligible that Defendant Logan can not frame a proper response. Quite the contrary, Defendant Logan has already picked the meat from Plaintiff J & J's complaint to phrase its de facto response in its *Memorandum in Support of 12(b) Motions* —specifically, that Defendant Logan is not liable for any of Plaintiff J & J's claims pursuant to a contract allegedly entered into by the parties.[18] Accordingly, Defendant Logan's motion for a more definite statement is DENIED.

In light of the foregoing analysis, this Court hereby DENIES all of Defendant's *Motions Under Rule 12* [5].

It is SO ORDERED.

---

**18.** In fact, to abuse an already stale metaphor, this Court notes that the Defendant was able to sandwich its *Memorandum in Support of 12(b) Motions* with an alleged agreement and correspondence related to the meat slicing machine and dated at a time provided by the Plaintiff in its Complaint.